```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/15/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LENARD BERRIAN,

                Plaintiff,

       v.

CITY OF NEW YORK; CAPTAIN WEEKS;
CAPTAIN BOLANOS; and CAPTAIN
MORGAN,

                Defendants.

No.   19-CV-793 (RA)

MEMORANDUM OPINION
& ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Lenard Berrian, proceeding *pro se*, brings this action under 42 U.S.C. § 1983, alleging that while detained at the Manhattan Detention Complex (the "MDC"), Defendants City of New York, Captain Weekes, Captain Bolanos, and Captain Morgan violated his constitutional rights.[1] Now before the Court is Defendants' motion to dismiss. For the following reasons, the motion is granted.

## BACKGROUND[2]

In early November 2018, Plaintiff was being detained in the MDC for an alleged violation of his parole conditions. On November 6, a preliminary violation hearing was held before the New York State Board of Parole (the "Parole Board"), which concluded that "there [was] not probable cause that [Plaintiff] violated the conditions of [his] release" and lifted the warrant pursuant to which he was being detained at the MDC. Compl., Ex. A (Parole Board's

---

[1] In their motion to dismiss, Defendants identify the three individual Defendants as Mackeisha Weekes, Susanna Bolanos, and Rachel Morgan. *See* Defs.' Mot. at 1. Although Plaintiff's complaint refers to Defendant Weekes as "Weeks," the Court adopts the spelling provided by Defendants for purposes of this opinion.

[2] The Court draws the following facts from Plaintiff's complaint and the documents attached to it, *see* Dkt. 1, and accepts them as true for the purposes of this motion. *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Hearing Decision & Summary).

The following day, on November 7, Plaintiff remained detained in the MDC in housing unit 7-West. Around 8:10 a.m., Plaintiff was "complain[ing]" to Defendants Weekes and Bolanos that he should no longer be in custody because he "had just [the] day before received a warrant lift from the parole department." Compl. at 3. Plaintiff alleges that, as a result of "complaints made to them about [his] discharge date," Defendants Weekes and Bolanos "w[ere] trying to get [him] into the cell." *Id.* While Plaintiff was "complaining to both captains, an inmate came towards [him] and punched [his] left side face." *Id.* at 4. As a result, Plaintiff "backed up into [his] cell" and "the cell door was shut close[d] by either of the captains." *Id.* Plaintiff asserts that he remained in his cell from then "until the next shift . . . around 4:30 p.m. or so," during which time he was allegedly denied "medical services," "unable to make any phone calls to family/lawyers to inform [them] about the confinement conditions," and not provided food "when lunch time (noon) had come around." *Id.* at 4, 6.

Around 4:30 p.m. that day, Defendant Morgan "moved [Plaintiff] to another unit (4-North)" in the MDC. *Id.* Plaintiff alleges that while moving him, Defendant Morgan told him that a "Medical Isolation Tag had been placed on [his] cell in the control panel and that's why [his] cell had stayed in lock status" since that morning. *Id.* According to Plaintiff, however, Defendant Morgan did not know why the tag had been placed on his cell "because [he] had no medical issues at such time." *Id.* Rather, Defendant Morgan explained to Plaintiff that he was being moved to 4-North "due to [the] fact [that] the inmate [who] assaulted [him] was still on the unit." *Id.* at 4-5.

Around 7 p.m. that evening, "two department investigators" were in 4-North – Plaintiff's new housing unit – regarding another matter. Plaintiff states that he "approached and told one of

2

the officers (Investigator Glover #416)" that he was being unlawfully detained after the Parole Board's decision and that he had been locked in his cell in 7-West for much of the day. *Id.* at 5. Plaintiff also alleges that he called 311 to "complain about being in custody illegally as well as the conditions [he] was arbitrarily forced to deal with." *Id*.

At some point the next day, on November 8, Plaintiff was taken to the MDC's medical unit "to get checked for injuries by the doctor." *Id.* There, he was "given a dose of psychotrophic medication that [he] had missed due to [yesterday's] cell re-location." *Id.* at 6. According to Plaintiff, he took this medication "nightly . . . for [a] diagnosis of [b]i-polar/anxiety/depression." *Id.*

Plaintiff filed this action on January 25, 2019. On March 15, 2019, the Court dismissed Plaintiff's claims against the New York City Department of Correction (the "DOC") because it is not an entity that can be sued. *See* Dkt. 5 (citing N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.") and *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)). In light of Plaintiff's *pro se* status, the Court construed his claim as one brought against the City of New York (the "City") and directed the Clerk of Court to amend the caption to reflect that change. *See* Dkt. 5. On October 11, 2019, Defendants filed the present motion to dismiss. *See* Dkt. 20. Plaintiff opposed the motion on November 25, 2019, *see* Dkt. 29, and Defendants filed their reply on January 3, 2020, *see* Dkt. 30.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its

3

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [his] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011). In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

When, as here, the plaintiff is proceeding *pro se*, the complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggest[s]." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). But "[e]ven in a *pro se* case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## DISCUSSION

Plaintiff raises four claims: (1) deliberate indifference to his medical needs under § 1983; (2) false imprisonment under § 1983; (3) a *Monell* claim against the City; and (4) a state law claim for concerted action.[3] The Court addresses each claim in turn.

### I.     Deliberate Indifference Claim

Plaintiff first alleges that Defendants Weekes, Bolanos, and Morgan were deliberately indifferent to his medical needs after his assault on November 7. *See, e.g.*, Compl. at 7 ("Defendant-2 actions and/or inactions amounted to an authorized deprivation of . . . medications

---

[3] In his complaint, Plaintiff also asserted a claim for failure to protect him from the assault he allegedly suffered when talking to Defendants Weekes and Bolanos on the morning of November 7. *See e.g.*, Compl. at 7-8 ("Captain Week[e]s did nothing to protect [him] from the charging inmate's assault."). But Plaintiff has withdrawn that claim. *See* Pl.'s Opp. 1-2 ("Plaintiff here now dismisses [the] claim against defendant for failure to protect due to defendant's lack of notice/warning to the claimed assault.").

. . . and inaction to facilitate medical services for injured inmates.").

The Fourteenth Amendment's Due Process Clause governs claims of unconstitutional conditions, including inadequate medical care, brought by pretrial detainees – such as Plaintiff. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2015).  In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), "the [Supreme] Court rejected the requirement that, for such claims, a pretrial detainee establish a state of mind component to the effect that the official applied the force against the pretrial detainee 'maliciously and sadistically to cause harm.'" *Darnell*, 849 F.3d at 21.  Thus, to establish a § 1983 claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy two prongs: (1) "an 'objective prong' showing that the [deprivation of medical care] w[as] sufficiently serious to constitute [an] objective deprivation[] of the right to due process," and (2) "a 'subjective prong' – perhaps better classified as a '*mens rea* prong' or 'mental element prong' – showing that the [defendant official] acted with at least deliberate indifference" in denying medical care.  *Id.* at 29.  Regarding the subjective or *mens rea* prong, "rather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 719 (S.D.N.Y. 2017) (quoting *Darnell*, 849 F.3d at 33, 35).

Plaintiff's medical deliberate indifference claim stems from the allegation that he was not provided medical care after his assault until some unspecified time the next day.  *See* Compl. at 6 ("While both captains . . . had me shut in the cell after being assaulted, I didn't get any medical services[.]"); Pl.'s Opp. at 2 ("Under the complaint's allegations the defendant had a constitutional duty/obligation to see that plaintiff be seen by medical staff promptly after the ensuing assault.").  Plaintiff, however, fails to plausibly allege either the objective or subjective

prong to establish this deliberate indifference claim.

Plaintiff first fails to allege that being deprived medical care from the time of his assault on November 7 to when he was taken to the MDC's medical unit on November 8 "w[as] sufficiently serious to constitute [an] objective deprivation[] of the right to due process." *Darnell*, 849 F.3d at 29. "[I]n cases of delayed or inadequate care, 'it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant.'" *Isaac v. City of New York*, No. 17-CV-1021 (PGG), 2018 WL 1322196, at *3 (S.D.N.Y. Mar. 13, 2018) (citation omitted). But nowhere in the complaint does Plaintiff state what injuries he suffered as a result of the November 7 assault. Instead, he asserts only that he was hit in the face and then shut in his cell. This omission is critical because, as one court in this district explained, "the actual medical consequences that flow from the alleged denial of care [is] highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.*

Notably, Plaintiff himself suggests that he did not suffer any injuries requiring medical attention. In his complaint, he alleges that Defendant "Morgan could not explain [the] [medical] isolation tag because [he] had no medical issues at such time." Compl. at 4. And in his opposition papers, Plaintiff again refers to the "medical isolation tag on [his] cell" as "false/fake." Pl.'s Opp. at 4. Plaintiff, therefore, fails to allege what injuries he suffered requiring immediate medical attention and thus what risk of harm he faced due to a delay in receiving medical services. *See Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *8 (S.D.N.Y. Aug. 25, 2017) ("A claim of an unconstitutional delay or interruption in treatment is only cognizable if it 'reflects deliberate indifference to a serious risk of health or safety, to a

life-threatening or fast-degenerating condition[,] or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.").

To the extent that Plaintiff intended this claim to be based on the fact that he missed "a dose of psychotropic medication . . . due to cell re-location," Compl. at 6, that too would be insufficient to survive Defendants' motion. Again, nowhere in the complaint does Plaintiff state what risk of harm or potential medical complications he suffered as a result of receiving that dose of medication one day late. *See also Ferguson v. Cai*, No. 11-CV-6181 (PAE), 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("The Second Circuit has held that a short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where 'the alleged lapses in treatment are minor.'"). Without asserting why this delay created a "sufficiently serious" harm, Plaintiff has not met "the high bar set by the Second Circuit for delay-based deliberate-indifference claims." *Feliciano v. Anderson*, No. 15-CV-4106 (LTS), 2017 WL 1189747, at *11 (S.D.N.Y. Mar. 30, 2017) (citing *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999)). The Court thus cannot conclude that Plaintiff suffered a deprivation of medical care amounting to an objective due process deprivation.

Finally, even if Plaintiff could satisfy the objective prong, Plaintiff also has not plausibly alleged that Defendants Weekes, Bolanos, and Morgan knew or should have known that delaying treatment for Plaintiff "posed an excessive risk to [his] health or safety." *See Darnell*, 849 F.3d at 35. Because Plaintiff never states what injuries, if any, that he suffered as a result of the November 7 assault, there is no way to conclude whether the individual Defendants acted in an objectively reckless manner by not immediately taking him to the MDC's medical unit. *See Feliciano*, 2017 WL 1189747, at *13 ("[A] defendant possesses the requisite *mens rea* when he

7

acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result."). Plaintiff seems to argue that the failure to prepare an official injury report and placement of a "medical isolation tag" on his cell demonstrates the requisite intentional or, at a minimum, recklessness to deprive him of medical care. *See* Pl.'s Opp. at 3. Yet, even if those actions could in theory demonstrate a disregard for Plaintiff's health, Plaintiff still has not demonstrated that he was facing a "substantial risk of serious harm" that Defendants Weekes, Bolanos, and Morgan knew or should have known about and then disregarded. *Feliciano*, 2017 WL 1189747, at *13.

Accordingly, Plaintiff's deliberate indifference claim is dismissed.

## II.     False Imprisonment Claim

Plaintiff next brings a false imprisonment claim "for confinement without just cause" from November 6, 2018 through November 9, 2018 because the "warrant [pursuant to which he was detained] was lifted on 11/6 and [his] release didn't happen until 11/9." Compl. at 9. He asserts that he told Defendants Weekes, Bolanos, and Morgan about this, who did nothing and "shut [him] in the cell." *Id.* at 5. He also says that he told two DOC investigators in 4-North on November 7 and called 311 to "ma[k]e [a] complaint about being in custody illegally[.]" *Id.* at 5-6. To establish a false imprisonment claim, a "plaintiff must demonstrate that defendant[s] intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001). Generally speaking, confinement is privileged if a person is detained pursuant to a facially valid warrant. *See Dupree v. City of New York*, 418 F. Supp. 2d 555, 559 (S.D.N.Y. 2006).

Here, the only element at issue is whether Plaintiff's confinement in the MDC was

privileged from November 6 to November 9. Defendants contend that Plaintiff was lawfully detained over those three days because "the necessary warrant lift authorization from the State of New York had not yet been provided to the New York City Department of Correction." Defs.' Reply at 4; *see also* Defs.' Mot. at 9 ("Plaintiff does not plausibly allege that the *Preliminary Violation Hearing Decision and Summary* was final such that confinement after such disposition was unlawful; nor could he." (emphasis in original)). The Court agrees with Defendants that Plaintiff has not plausibly alleged that his detention over those three days constituted false imprisonment.

As an initial matter, Plaintiff's detention at the MDC – initially and up until November 6, 2018 – was certainly privileged. Plaintiff was arrested and detained pursuant to a warrant for an alleged parole violation. New York law provides broad authority for this:

> If the parole officer having charge of a . . . paroled . . . person . . . shall have reasonable cause to believe that such person . . . has violated one or more conditions of his presumptive release, parole, conditional release or post-release supervision, such parole officer shall report such fact to a member of the board . . . and thereupon a warrant may be issued for the retaking of such person and for his temporary detention in accordance with the rules of the board. . . . A warrant issued pursuant to this section shall constitute sufficient authority to the superintendent or other person in charge of any jail, penitentiary, lockup or detention pen to whom it is delivered to hold in temporary detention to the person named therein[.]

N.Y. Exec. Law § 259-i(3). Courts have consistently held that detention pursuant to this warrant precludes a finding that confinement was not privileged. *See, e.g.*, *Kearney v. Westchester Cty. Dep't of Corr.*, 506 F. App'x 45, 46 (2d Cir. 2012) ("[Plaintiff] cannot allege that his confinement was not privileged because the Westchester County Department of Correction held him pursuant to a facially valid parole warrant.") (citing N.Y. Exec. Law § 259-i(3)); *Smith v. Flynn*, No. 16-CV-9242 (NSR), 2018 WL 3946453, at *6 (S.D.N.Y. Aug. 16, 2018) (holding that the defendants "accepted custody of the Plaintiff in 2010 and in 2015 on the authority of two

facially valid warrants, which . . . provided sufficient authority to detain the Plaintiff" (citing N.Y. Exec. Law § 259-i(3)(a)(i))); *Dupree*, 418 F. Supp. 2d at 559 (rejecting a false imprisonment claim because the plaintiff "was lawfully detained pursuant to a facially valid warrant issued by the New York State Division of Parole"). Nor has Plaintiff "allege[d] sufficient facts to show that the officers accepting custody of Plaintiff . . . would have reason to suspect or detect" that the warrant was invalid. *Smith*, 2018 WL 3946453, at *6. For this reason, there is no dispute that – at least up until the preliminary violation hearing – Plaintiff's confinement at the MDC was privileged. *See id.* (explaining that the defendants were "act[ing] consistent with their duty in detaining the [p]laintiff," and therefore the plaintiff was "subject[ed] . . . to privileged confinement").

For this reason, Plaintiff focuses his false imprisonment claim on the three days he was detained at the MDC after his preliminary violation hearing. *See* Compl. at 3 ("I had just [the] day before received a warrant lift from the parole department on 11/6, and I wanted to know why was I still in custody."); *see also* N.Y. Exec. Law § 259-i(3)(c)(i) (requiring that a preliminary violation hearing be held "[w]ithin fifteen days after the warrant for retaking and temporary detention has been executed"); *id.* § 259-i(3)(c)(iv) ("The preliminary hearing shall be scheduled to take place no later than fifteen days from the date of execution of the warrant."). It is true, as Plaintiff alleges, that at his hearing the Parole Board determined that "there [was] not probable cause that [Plaintiff] violated the conditions of [his] release" and lifted the warrant. Compl., Ex. A; *see also* N.Y. Exec. Law § 259-i(3)(c)(vii) ("If the hearing officer is satisfied that there is no probable cause to believe that such person has violated one or more conditions of release in an important respect, he or she shall dismiss the notice of violation and direct such person be restored to supervision."). But that is not enough to establish that he was falsely imprisoned.

Although an unreasonable delay in executing a legal duty to release a person from custody can constitute false imprisonment, it requires a showing that the defendant "intentional[ly] refus[ed] to release" that person. *Vumbaca v. Terminal One Grp. Ass'n*, 859 F. Supp. 2d 343, 378-79 (E.D.N.Y. 2012) ("When a legal duty exists to release plaintiff from confinement, an intentional refusal to release plaintiff constitutes false imprisonment." (citing *Talcott v. Nat'l Exhibition Co.*, 144 A.D. 337 (2d Dep't 1911))); *cf. Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification."). This requirement aligns with § 1983's general rule that a plaintiff must demonstrate a defendant's personal involvement in an alleged violation to establish liability. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions has violated the Constitution."). Thus, "[t]o be liable for false imprisonment, the plaintiff must prove that the defendant *intended* or *instigated* the confinement of the plaintiff." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997).

Although Plaintiff alleges that he told Defendants Weekes, Bolanos, and Morgan that his warrant was lifted and he should be released, he includes no factual allegations to suggest that they acted intentionally to wrongly keep him in custody in the MDC until November 9. The fact that Plaintiff told them about the Parole Board's decision alone is not sufficient to demonstrate that they had an intent to unlawfully bar his release. *See Smith*, 2018 WL 3946453, at *7 (noting that the "mere receipt of a letter from an inmate," arguing that his custody is unlawful, "without more, does not constitute personal involvement for the purposes of section 1983 liability").

Moreover, the transcript of his 311 call, which Defendants submitted with their motion to

11

dismiss, significantly weakens Plaintiff's false imprisonment claim.[4]  During the call, Plaintiff acknowledges that, although the Parole Board lifted the warrant, it had not yet granted official authorization to the DOC for his release.  *See* Dkt. 22, Ex. 1 (Transcript of 311 Call) ("Until I get the warrant lift, I can't go no where. . . . I'm calling around to see if I can get parole to lift the warrant.").  He also explains on the call that "[he] went to a hearing on Tue[sday].  They reinstated me and lifted the warrant.  That's what my paper says.  Yesterday and Tuesday, NYS Parole haven't give DOC the warrant lift."  *Id.*  ("Please contact the state so they can tell the Dept. of Corrections to lift the warrant.").  Perhaps even more telling, Plaintiff also states that he told Defendant Morgan about the Parole Board's decision and "[s]he called down to the CO [and] was told the State Parole did not give them the warrant lift."  *Id.*  This transcript, therefore, explains why Plaintiff had not yet been released from the MDC and demonstrates that the individual Defendants were not intentionally refusing to release him.

Accordingly, despite the result of the November 6 hearing, Plaintiff's subsequent three-day confinement – as currently plead – remained the result of an "arrest under a valid process issued by a court having jurisdiction."  *Veras v. United States*, No. 16-CV-8045 (KNF), 2018 WL 3711788, at *5 (S.D.N.Y. Aug. 3, 2018); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007) ("Where an individual's arrest is effectuated pursuant to a warrant, there can be no claim for . . . unlawful imprisonment.").  He has thus not plausibly plead that his detention was "without legal process" over the course of those three days, as is required.  *Watson*

---

[4] Defendants submitted a declaration from Yanique Calvert, the Operations Administrator of the DOC's Office of Constituent and Grievance Services.  Dkt. 22 (Decl. of Calvert).  With her declaration, Calvert attached "a true and accurate copy of the 311 call history . . . for call confirmation number C1-1-1641753199" – the confirmation number for the 311 call that Plaintiff included in his complaint.  Dkt. 22; *see also* Compl. at 5 ("I also call[ed] 311 and made complaint about being in custody illegally as well as the conditions I was arbitrarily forced to deal with.  I was given a complaint/confirmation # C1-1-1641753199.").  The Court may consider this exhibit because Plaintiff referred to his 311 call in his complaint, even providing an exact "complaint/confirmation" number matching the one on the document submitted by Defendants.  *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

*v. United States*, 865 F.3d 123, 131 (2d Cir. 2017) ("[F]alse imprisonment is characterized by 'detention *without* legal process[.]'"). Defendants' motion to dismiss the false imprisonment claim is granted.

### III.     *Monell* Claim

Plaintiff also alleges that the City is liable pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1971), for alleged constitutional violations that he suffered at the MDC. Plaintiff asserts that the City "tolerated [a] custom/practice of not reporting use of force incidents" and "fail[ed] to train in the area [of] use of force incidents by way [of a] duty to protect victim detainee[s]." Compl. at 5-7.

Under § 1983, a municipality cannot be vicariously liable for the acts of its employees. *See Coon v. Town of Springfield*, 404 F.3d 683, 686-87 (2d Cir. 2005) (citing *Monell*, 436 U.S. at 691). As such, "*Monell* dictates that any § 1983 claim against a municipal entity must be premised on the theory that the municipal actor's allegedly unconstitutional 'acts were performed pursuant to a municipal policy or custom.'" *Stalter v. County of Orange*, 345 F. Supp. 3d 378, 391 (S.D.N.Y. 2018) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)). In the Second Circuit, courts apply a two-prong analysis for determining whether a claim can be brought against a municipal entity: (1) "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer," and (2) "the plaintiff must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force

13

of law," as well as, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick v. Thompson*, 536 U.S. 51, 61 (2011); *see also Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (explaining what actions or omissions by a municipality can satisfy the "policy or custom requirement").

Plaintiff's *Monell* claim relies on the assertion that the City permitted a custom of officers not reporting use-of-force incidents and failed to train its officers to file these reports. *See* Pl.'s Opp. at 5 ("Defendant cites correctly 'the only challenge to an alleged policy or custom is described as one of not reporting use of force incidents[.]"). Plaintiff's only factual allegation, however, is that the City's policy or custom is evident based on the failure of the "three (3) supervisory officials" – presumably Defendants Weekes, Bolanos, and Morgan – to file a use-of-force incident report after he was assaulted on November 7. *See id*.

These factual allegations are insufficient to survive the motion to dismiss. Plaintiff's *Monell* claim is grounded solely on a generalized allegation that a use-of-force incident report was not filed in his case and therefore that must be the City's general policy or custom. Plaintiff makes no assertions that could be construed – even liberally as is required for a *pro se* plaintiff – that a municipal policymaker established this policy or was even aware that this custom existed. Conclusory assertions of this sort are inadequate to allege a *Monell* claim. *See Daniels v. City of New York*, No. 18-CV-3717 (RA), 2019 WL 1437586, at *4 (S.D.N.Y. Mar. 31, 2019) ("[A] plaintiff must allege facts – not merely conclusory assertions – that 'tend[] to support, at least circumstantially, an inference that such a municipal policy or custom exists.'").

Plaintiff's *Monell* claim could not survive Defendants' motion for two additional reasons. First, it is based solely on allegations about a single incident – that is, the alleged assault on

November 7.  Courts, however, have refused to permit the pleading of municipal liability based on the occurrence of one act.  *See, e.g.*, *Koger v. New York*, No. 13-CV-7969 (PAE), 2014 WL 3767008, at *26-27 (S.D.N.Y. July 31, 2014) ("[A] single incident is 'not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" (citation omitted)).  Second, Plaintiff's *Monell* claim alleges misconduct by Defendants Weekes, Bolanos, and Morgan to argue that the City should be held liable.  But it is well-settled that *Monell* "[l]iability cannot be premised on a theory of *respondeat superior*." *Williams v. N.Y.C. Dep't of Corr.*, No. 19-CV-5200 (RA), 2020 WL 509180, at *6 (S.D.N.Y. Jan. 30, 2020) (citing *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)).

Accordingly, because the complaint includes no more than "boilerplate allegations of unconstitutional policies and practices," *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011), the *Monell* claim against the City is dismissed.

**IV.   State Law Claim**

Lastly, Plaintiff attempts to bring a claim against Defendants Weekes and Bolanos "under state tort law" for "concerted action with principle aggressor."  *See* Compl. 8, 10 (emphasis in original).  Under New York law, "[t]he theory of concerted action 'provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate 'in a common plan or design to commit a tortious act.'" *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 295 (1992).  "[E]ach defendant charged with acting in concert [must] have acted tortiously and that one of the defendants committed an act in pursuance of the agreement which constitutes a tort."  *Id.*  Defendants first ask, if Plaintiffs' federal claims are dismissed, that the Court decline to exercise supplemental jurisdiction over the state law claim.  *See* Defs.' Mot. at

15

6-7. In the event that the federal claims are not dismissed, Defendants dispute this claim on the merits, arguing that "Plaintiff has not alleged any facts supporting a theory that there was any 'understanding, express or tacit, to participate in a common plan or design to commit a tortious act.'" Defs.' Reply at 6.

Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 .3d 299, 305 (2d Cir. 2003).

The Court has already granted Defendants' motion as to Plaintiff's three federal claims. Because the Court addressed and dismissed Plaintiff's federal claims early in the litigation, declining jurisdiction here would not disserve the principles of judicial economy, convenience, or fairness. For this reason, it declines to exercise supplemental jurisdiction over the remaining state law claim and need not address it.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in its entirety. Should Plaintiff choose to amend, he shall file the amended complaint no later than May 15, 2020, if he has a good faith basis to do so. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 20.

SO ORDERED.

Dated:   April 15, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge